**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LEROY CHARLES SCOTT,

      Petitioner,                      Civil No. 05-CV-73188-DT

                                          HONORABLE NANCY G. EDMUNDS

v.                                 UNITED STATES DISTRICT JUDGE

MARY BERGHUIS,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE
## PETITION FOR WRIT OF HABEAS CORPUS

      Leroy Charles Scott, ("Petitioner"), presently confined at the West

Shoreline Correctional Facility in Muskegon Heights, Michigan, has filed a *pro se*

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he

challenges his convictions for first-degree criminal sexual conduct, M.C.L.A.

750.520b(1)(a); second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(a);

and being a third felony habitual offender, M.C.L.A. 769.11.  The Court concludes

that Petitioner has not met his burden in proving the state court's adjudication

was contrary to established federal law.  Further, the Court finds that Petitioner

has procedurally defaulted his other claims and is unable to show cause and

prejudice.  Accordingly, the writ of habeas corpus is denied.

1

**I. Procedural History**

Petitioner was convicted of First Degree Criminal Sexual Conduct and Second Degree Criminal Sexual Conduct following a jury trial in the Barry County Circuit Court.  Petitioner filed an appeal of right challenging the judgment of his convictions on six grounds.  Specifically, Petitioner alleged his Constitutional rights were violated when: (1) he was denied his right to counsel of choice; (2) there was insufficient evidence to establish his guilt beyond a reasonable doubt; (3) improper testimony about an alleged "proposal" was elicited by the prosecution; (4) the jury instructions improperly lacked an instruction allowing for the defense of mistake; (5) he was precluded from calling an assistant prosecutor as a witness; and, (6) there were sentencing errors.  Petitioner's conviction was affirmed on appeal. *People v. Scott,* 242250 (Mich.Ct.App. January 15, 2004); *lv. den.* 471 Mich. 872; 685 N.W. 2d 672 (2004).

On August 12, 2005, Petitioner filed a petition for writ of habeas corpus, in which he sought habeas relief on the five grounds he raised in the Michigan courts on his direct appeal.  On September 21, 2005, this Court granted the motion and issued an order holding in abeyance the petition for writ of habeas corpus, while Petitioner returned to the state courts to exhaust additional claims.

On February 10, 2006, Petitioner filed a motion to voluntarily dismiss the petition without prejudice, which this court granted on May 15, 2006.  On July 18,

2

2006, Petitioner sent a letter to this Court, which the court construed as a motion for reconsideration.  In this letter, Petitioner claims that he never received this Court's opinion and order holding the petition in abeyance, and if he had received it, he would never have filed for the motion to voluntarily dismiss his petition without prejudice.  On July 20, 2006, this Court vacated its opinion and order voluntarily dismissing the petition for writ of habeas corpus and reinstated its order to hold habeas in abeyance.

On September 8, 2006, Petitioner filed *pro se* with the Barry County Circuit Court a motion to disqualify the judge, motion for an evidentiary hearing, and Motion for Relief from Judgment ("M.C.R. 6.500 Motion").  In his M.C.R. 6.500 Motion, Petitioner raised seven claims: (1) that he was tried in the wrong jurisdiction and venue; (2) that he was denied a fair trial because the venire from which his jury was selected did not represent a fair cross section of the community; (3) that he was subject to an illegal search and seizure in violation of his Fourth Amendment Rights; (4) that there was judicial misconduct; (5) that there was prosecutorial misconduct; (6) various incidents of ineffective assistance of trial counsel; and (7) ineffective assistance of appellate counsel for failure to suppress Petitioner's statement and raise the issue of involuntariness due to advance intoxication.

3

The Barry County Circuit Court denied Petitioner's Motion to Disqualify. *People v. Scott,* No. 02-029-FC (Barry County Circuit Court, September 18, 2006). The Barry County Circuit Court separately denied Petitioner's M.C.R. 6.500 Motion on the ground that Petitioner had failed to demonstrate good cause for failing to raise his post-conviction issues on direct appeal, nor had he established actual prejudice, as required by M.C.R. 6.508(D)(3)(b). *People v. Scott,* No. 02-029-FC (Barry County Circuit Court, September 18, 2006). The Michigan appellate courts denied Petitioner's post-conviction application for leave to appeal "because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Scott,* No. 273532 (Mich.Ct.App. April 20, 2007); *lv. den.* 480 Mich. 920; 740 N.W. 2d 295 (2007).

On December 18, 2007, this Court granted the motion to reopen the habeas petition and amended the caption to change the respondents due to the fact that Petitioner had been moved to a new prison. *See Scott v. Berghuis,* No. 2007 WL 4548286 (E.D. Mich. December 18, 2007).

Petitioner has now re-filed his petition for writ of habeas corpus with this Court, having exhausted all issues in the state courts.

## II. Statement of Facts

On August 22, 2001, Petitioner, his girlfriend Monica Kidder ("Ms. Kidder"), and Ms. Kidder's 12-year-old cousin Carnelle James ("Ms. James") were at the

4

residence of Petitioner and Ms. Kidder. (Tr. I, at 90).  At some time in the evening, Ms. James fell asleep on the couch while Ms. Kidder was asleep in the bedroom and Petitioner was on the porch drinking. (*Id.* at 93).  Petitioner later came inside, sat next to Ms. James and reached down into her shorts and into her underwear. (*Id.* at 94).  Ms. James testified that she felt his fingers go up inside her. (*Id.* at 96).  When she felt his fingers insider her, Ms. James said no, got up, and went into the spare bedroom to go back to sleep. (*Id.* at 97).  About two minutes later, Petitioner went into the spare bedroom and sat on the end of the bed.  Petitioner then reached under the covers and up Ms. James' shorts and touched her in the same way that he had touched her while she was on the couch. (*Id.* at 98).  Ms. James then started screaming and crying and went to wake up Ms. Kidder. Before Ms. James got to Ms. Kidder's bedroom, Petitioner told Ms. James not to tell anyone and asked if this could just be between the two of them. (*Id.* at 99).

Ms. Kidder woke up, learned what had happened, and called Ms. James' mother. (Tr. I, at 102).  Christine Main, Ms. James mother, came to pick up Ms. James at Petitioner's residence.  At some point when she was there, someone handed her the phone and told her that Petitioner's brother wanted to speak with her. (*Id.* at 166).

Petitioner was charged with first degree criminal sexual conduct and second degree criminal sexual conduct.  On December 12, 2001, Petitioner was arraigned and given court-appointed counsel to represent him at trial. (Tr. 6/20/02, at 12.)  For at least four months before trial started on May 13, 2002, Petitioner sought to retain counsel, but it took a while because he was indigent and it took time for him and his family to get together enough money to hire counsel. (Tr. I, at 5-6.)  Petitioner sought to substitute counsel on Friday, May 9, 2002, one business day before trial was to begin. (*Id.* at 4.)  The trial court denied this request because it was untimely. (*Id.* at 6-7.)

Petitioner sought to call as a witness assistant prosecutor Hawkins.  The prosecution moved to quash the subpoena.  Petitioner argued that Ms. Hawkins' testimony might be necessary to impeach the testimony of Ms. James because Ms. Hawkins was in the observation room during the initial forensic interview of Ms. James. (Tr., 5/9/02 at 3.)  The police interview that Ms. Hawkins witnessed was recorded, and Petitioner's counsel had a copy of the recording as well as the police report from the interview. (*Id.* at 4)  The trial court granted the government's motion to quash and did not allow Petitioner to call Ms. Hawkins as a witness. (*Id.* at 10.)

At Petitioner's sentencing, Petitioner's counsel objected to the habitual offender information, claiming that there were two offenses on the information

6

from the same date, which would make it petitioner a third felony habitual

offender, not a fourth offender.  However, Petitioner's counsel recognized that

Petitioner had six to eight prior felonies, so the government could amend the

information to include a different felony. (Tr., 6/20/02, at 21-22).  The prosecutor

moved to amend the habitual offender information, and Petitioner's counsel did

not object. (*Id.* at 23.)  Petitioner was sentenced to 240 to 360 months in prison.

(*Id.* at 26).

### III.  Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)

governs this Court's habeas corpus review of state court decisions.  Specifically,

28 U.S.C. §2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be granted
> with respect to any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of that claim: (1) resulted in
> a decision that was contrary to, or involved an unreasonable application
> of; clearly established Federal law, as determined by the Supreme
> Court of the United States; or (2) resulted in a decision that was based
> on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. §2254(d).

The Supreme Court has held that in order to grant habeas corpus relief

under AEDPA, a federal court must find a violation of law "clearly established" by

7

holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 379-380 (2000).  A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently that [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 412-413.  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.  *Id.* at 413.

In further explaining the "unreasonable application" clause, the Supreme Court provided that the inquiry should be whether the state court's application of clearly established federal law was objectively unreasonable.  *Id.* at 409.  An unreasonable application, however, is not the same as an incorrect application of federal law, and "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.  The Sixth Circuit held that it would rely solely on the Supreme Court decision in *Williams* for the appropriate standard under §2254(d).  *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).

8

## IV.  Discussion

### A.  Claims Presented on Appeal of Right

Petitioner raises five claims here that he filed on his appeal of right. Specifically, Petitioner alleged his Constitutional rights were violated when: (1) he was denied his right to counsel of choice; (2) there was insufficient evidence to establish his guilt beyond a reasonable doubt; (3) the prosecutor improperly elicited testimony about an alleged "proposal;" (4) he was precluded from calling an assistant prosecutor as a witness; and (5) there were sentencing errors.

### 1.    Right to Counsel of Choice

It is a well-established principle that an accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair.  *Strickland v. Washington*, 466 U.S. 668, 686 (1984). A defendant who desires and is financially able to retain his own counsel should be afforded a fair opportunity to secure counsel of his own choice.  *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *Serra v. Toombs*, 4 F.3d 1348, 1351 (6th Cir. 1993), *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981).  However, this does not imply an absolute right to counsel of choice.

> While the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

*Wheat v. United States*, 486 U.S. 153, 159 (1988).

9

The right to the assistance of counsel does not guarantee that a defendant will be represented by a particular attorney.  *Serra*, 4 F.3d at 1351.  A trial court has wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar.  *Id.*; *See also Morris v. Slappy*, 461 U.S. 1, 11-12 (1983).  The Supreme Court has recognized that there are no mechanical tests for deciding when a denial of a continuance to afford substitute counsel time to prepare is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964); *Linton*, 656 F.2d at 210.

The Sixth Circuit has established that in reviewing the denial of a motion to substitute counsel, the court must consider: (1) the timeliness of the motion; (2) the adequacy of the court's inquiry into the matter; (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense; and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice.  *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001).

As to the first factor, Petitioner moved to substitute counsel and sought an adjournment one business day before trial.  The Sixth Circuit has found that a

10

request for substitute counsel on the day of trial or a few days before trial is untimely.  *United States v. Trujillo*, 376 F.3d 593, 606-607 (6th Cir. 2004); *United States v. Wilhite*, 108 F. App'x 367, 369 (6th Cir. 2004).  Petitioner argues that he had been attempting to retain counsel for at least four months before trial, but he was only able to finally retain someone the week before trial.  This supports Petitioner's argument that his motion to substitute counsel was not for the purpose of delaying or manipulating trial.  However, this also shows that Petitioner had a fair opportunity to retain counsel.  The fact that he was unable to do so until the last minute is unfortunate, but ultimately, the trial court did not abuse its discretion when it found that the case had been pending for four months, and Petitioner should have made this request earlier.

As to the second prong, it does not appear that the district court conducted any inquiry whatsoever into the matter.  The way in which the issue was brought up to the court was through Mr. Gilbert, Petitioner's court-appointed attorney.  He stated, "I am appointed to Mr. Scott, and he and his family have indicated to me that they would prefer having retained counsel, Bill Davis, represent him; however, Mr. Davis could not be here today anyway."  (Tr. I, at 4.)  The prosecution then objected to the motion, indicating that it was made the last business day before trial and that there were no facts showing good cause for which to grant an adjournment.  In response:

11

Mr. Gilbert:  Your Honor, my client is indigent. That's why he got a court-appointed attorney.  It took him a while for his family to get the money together to retain an attorney.  As far as good cause is concerned, good cause has to do with regular issues.  However, the right to an attorney is a Sixth Amendment issue.  As far as being a constitutional issue, I believe the good cause in this case is the attorney of his own choice if good cause is actually an issue here.
The Court:   Anything else?
Mr. Gilbert:  No. Thank you, your Honor.
The Court:   Good cause is always an issue when it comes time for a request for an adjournment.  This case has been pending for four months.  We're on – my office apparently got a call on Friday from an attorney who indicated that there was some desire to retain him the last business day before the day set for trial.  It's not a reasonable request. . . . It's just too late.  It's totally unreasonable to request a substitution of counsel on the eve of trial.  If this had been done a month or two ago, which, quite honestly would have been halfway through the case at that point, I would have granted it, but not on the eve of trial. The motion is denied.
(Tr. I, at 4-7).

At no time does the court or Mr. Gilbert ask Petitioner to explain why he was seeking to substitute counsel.  The only information on the record is Petitioner's court-appointed attorney telling the court that his client "would prefer having retained counsel."  Because there was no inquiry into the matter, there is also nothing on the record about the extent of any conflict between Petitioner and his court-appointed attorney.  The lack of facts on the record makes it difficult to balance these factors with the public interest in the prompt and efficient administration of justice.

However, the Supreme Court has established that whether the court violated Petitioner's due process must be looked at in light of the reasons

12

presented to the trial court at the time of the denial.  In this case, there was no showing of good cause for substitution of counsel.  In fact, there is nothing on the record to indicate that there was any conflict between Petitioner and his court-appointed attorney.  Other than the statement that Petitioner preferred to retain counsel, the trial court was offered no reason to substitute counsel at the time of the denial.

Petitioner relies heavily on the Supreme Court's decision in *Faretta v. California*, 422 U.S. 806 (1974).  In *Faretta*, the Supreme Court found that the court violated the defendant's Sixth Amendment right when it denied him the freedom to refuse counsel and represent *himself* after he requested that of the court weeks before trial.  However, the Supreme Court has established that their holding in *Faretta*, that a defendant has the Sixth Amendment right to defend himself, does not encompass the right to choose any advocate if the defendant wishes to be represented by counsel.  *Wheat*, 486 U.S. at 159 n 3.  If Petitioner had sought to dismiss counsel and represent himself, then *Faretta* would be applicable. However, the right to represent oneself at trial and the right to be represented by counsel of choice are not governed by the same precedent.

The record shows that Petitioner offered no reasons to the court for wanting to substitute counsel, Petitioner was afforded a fair opportunity to secure counsel of his choice, the request was untimely, and substituting counsel would

13

require an adjournment.  In light of these factors, the trial court's denial of Petitioner's request to substitute counsel was not an objectively unreasonable application of established Supreme Court law.

### 2.   Insufficient Evidence

A habeas review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir. 1989).  The reviewing court must be deferential to the state court's resolution and must determine whether its application of the *Jackson* standard was reasonable.  *Martin v. Mitchell*, 280 F. 3d 594, 617 (6th Cir. 2002).  It is not the place of the reviewing court to "reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact."  *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  "The determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review."  *Dillard v. Prelesnik*, 156 F. Supp. 2d 798, 805 (E.D. Mich. 2001).  In addition, a sufficiency of the evidence claim cannot be established based solely on a claim that evidence was not corroborated.  The testimony of a single, uncorroborated prosecuting witness is generally sufficient to support a conviction, but the prosecution must present substantial evidence as to each element of the offense from which the jury could

14

find the accused guilty beyond reasonable doubt.  *Brown v. Davis*, 752 F. 2d 1142, 1144-45 (6th Cir. 1985).

Here, Petitioner claims that there was insufficient evidence to establish first degree criminal sexual conduct.  In his Memorandum of Law, Petitioner states "In fact, there was no evidence of any kind of penetration other than the testimony of Carnelle James, a twelve year old girl at the time of the alleged criminal episode." (Pet.'s Mot., at 22.)  Under Michigan law, a person is guilty of first-degree criminal sexual conduct if he or she engages in sexual penetration of another person and the other person is under 13 years of age. *See Greenwell v. Elo,* 77 Fed. Appx. 790, 792 (6th Cir. 2003)(*citing* Mich. Comp. Laws 750.520b(1)(a)).  However, as established by the Supreme Court, a prosecuting witness's testimony is enough to support a conviction.  In Petitioner's trial, Ms. James testified that Petitioner penetrated her vagina with his fingers while she was on the couch, and then again in the bedroom.  On her direct examination, the prosecution asked Ms. James about what happened when she was on the couch.

> Q:    Describe for me what you felt.
> A:    I felt his fingers going up inside of me.
> (Tr. I, at 96).

Ms. James then testified that she got up and went into Petitioner's spare bedroom to sleep.  She was then asked about what happened after she lay down on the bed in the spare bedroom:

15

Q:      What happened in the bedroom?
A:      Lee came in there after like two minutes or so, and he went down
by the end of the bed, and he turned on a lamp that was sitting on a
stand thingy. And then he was like sitting on the end of the bed like –
kinda like facing toward the door, like on an angle, sitting there.  And
then he was like – reached under the covers and into my shorts and
into my underwear and –
Q:      Did he touch your skin?
A:      Yes.
Q:      What part of your body did he touch in the bedroom?
A:      Same area he touched when I was on the couch.
Q:      And if you'd tell us again, then, what those same areas are of
what were touched in the bedroom.
A:      My vagina area where a baby would come out.
                                    * * *
Q:      . . . Did Lee say anything to you in the bedroom?
A:      Yes, he – he told me – he asked me not to tell anybody and that
it could just be between the two of us.
(*Id.* at 98-99).

Based on this testimony, a rational trier of fact could find that there was

actual penetration.  The prosecution was not required to present medical expert

testimony or independent evidence that penetration occurred. The testimony of a

sexual assault victim alone is sufficient to support a criminal defendant's

conviction. *See United States v. Howard,* 218 F. 3d 556, 565 (6th Cir. 2000)(*citing*

*Gilbert v. Parke,* 763 F. 2d 821, 826 (6th Cir. 1985)); *See also Loeblein v.*

*Dormire,* 229 F. 3d 724, 726-27 (8th Cir. 2000)(holding that any possible state law

requirement of corroboration of a sexual assault victim's testimony does not

implicate a constitutional right cognizable on habeas review).  This case

effectively came down to whether the jury would believe the testimony of Ms.

James or Petitioner.  Petitioner's attorney was able to use Ms. James' previous

16

inconsistent statements to bring into question her memory and credibility; however, based on the verdict, the jury believed her rendition of the facts during her examination at trial and found her credible.  The prosecution elicited testimony from Ms. James that was sufficient to establish the each element of the offense.

The Supreme Court has established that it is not the place of the reviewing court to reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact.  The state court's denial to grant Petitioner relief on this claim was not an objectively unreasonable application of established Supreme Court law.

### 3.    Prosecutorial Misconduct

In order for a habeas petitioner to prevail on a claim of prosecutorial misconduct, the statements of the prosecutor must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, (1974); *See also Darden v. Wainwright*, 477 U.S. 168, 181 (1986); *Simpson v. Jones*, 238 F.3d 399, 409 (6th Cir. 2000).  It does not constitute a violation of due process unless the misconduct was so pronounced and persistent that it permeated the entire atmosphere of the trial or so egregious so as to render the entire trial fundamentally unfair.  *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).  Courts are generally reluctant to find

17

that prosecutorial misconduct constitutes reversible error unless the conduct was egregious, continuous, and uncorrected by judicial intervention. *Berger v. United States*, 295 U.S. 78 (1935); *United States v. Bess*, 593 F.2d 749 (6th Cir. 1979). In addition, relief will not be granted unless the prosecutor's statement or misconduct "likely had a bearing on the outcome of the trial in light of the strength of the competent proof of guilt." *Pritchett*, 117 F.3d at 964.

In his petition for relief, Petitioner alleges one instance of prosecutorial misconduct. Petitioner argues that the prosecutor improperly tried to elicit hearsay testimony in order to suggest that Petitioner was guilty by showing that Petitioner's brother offered a proposal to the victim's mother to settle the case. The prosecution called Christine Main, the alleged victim's mother, as a witness in their case in chief. Ms. Main testified that while she was at Petitioner's house after the alleged incident, someone handed her the phone and told her that Petitioner's brother wanted to speak with her. While Ms. Main was on the witness stand, the prosecutor asked her about this conversation she had with Petitioner's brother:

Q:[By Mr. Banister, the prosecutor]: Was a proposal given to you over the phone?
A:  I felt like it was, yes.
Q:  What was Leon's request?
Mr. Gilbert:  Objection, your Honor, hearsay.
Mr. Banister:  Don't answer. Don't answer.
The Court:   Mr. Banister
Mr. Gilbert:  Also, I have a motion, your Honor. May we approach?
(Tr. I, at 166).

18

After a bench conference, the prosecutor moved on to new line of questioning.  The judge did not give a curative instruction to the jury to disregard the questions or answers regarding the alleged "proposal."  This is the only instance of prosecutorial misconduct that Petitioner alleges in his motion for habeas relief.  It is not at all clear that the jury would be able to infer from the one question and one answer that Petitioner's brother was trying to offer some sort of settlement agreement.  Even if the jury was able to make such an inference, this instance falls short of the demanding standard of establishing that the prosecutor's conduct was egregious, continuous, and uncorrected by judicial intervention.

Although the prosecutor's question would have elicited hearsay, the defense counsel objected before an answer was heard.  In fact, once defense counsel objected, it was the prosecutor who made sure the witness did not answer the question by stating, "Don't answer.  Don't answer."  Taking this exchange as a whole into consideration, and the fact that it is a completely isolated incident and there are no other allegations of prosecutorial misconduct, the prosecutor's questions did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181.  Even if the question was improper, it was extremely brief and isolated, and thus did not rise to a level that would deny Petitioner's right to due process.

19

The Michigan Court of Appeals reasonably denied this claim on its merits and the court's determination was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law.

### 4.    Right to Confront / Call witnesses

Petitioner also brings what he argues to be a "right to confrontation" claim. However, this claim is more aptly described as a right to call witnesses in his defense.

The Supreme Court has clearly ruled that a defendant is entitled to a fair opportunity to defend against the State's accusations, and "the rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."  *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  However, most claims involving rulings regarding the admission or exclusion of evidence are not cognizable on federal habeas review. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).  State-court evidentiary rulings do not rise to the level of due process violations unless they offend a principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.  *Montana v. Egelhoff*, 518, U.S. 37, 43 (1996).

In addition, a trial court has considerable latitude in excluding repetitious or cumulative evidence. *Hamling v. United States*, 418 U.S. 87, 127 (1974) (finding that on appeal, a court can only reverse a district court's exclusion of such

20

evidence for abuse of discretion).  The reviewing court should consider the importance of the witness's testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony, and the overall strength of the prosecution's case.  *Hill v. Hofbauer*, 337 F.3d 706, 718 (6th Cir. 2003).  The decision on whether to allow certain evidence and certain witnesses, then, is left to the discretion of the trial judge.

In this case, Petitioner subpoenaed Ms. Hawkins, an assistant prosecutor to testify at trial because she was present at a police interview of the alleged victim, watching through a 2-way mirror.  Petitioner disclosed to the prosecution his intention to call Ms. Hawkins as a witness in February 2002 and delivered her a subpoena the week before trial.  On Friday, May 9, 2002, the prosecution sought to quash the subpoena.  At that time, the judge granted the prosecution's motion, precluding Petitioner from calling Ms. Hawkins as a witness.  The Michigan Court of Appeals found that Petitioner failed to present any specific information concerning the content of this testimony or how it would impeach the victim's credibility.  Accordingly, the court found that the district court did not abuse its discretion in quashing Petitioner's subpoena because a party "may not leave it to this Court to search for a factual basis to sustain or reject his position." *Scott,* 242250, at * 5 (quoting *People v Norman*, 184 Mich. App. 255, 260 (1990)).

21

Petitioner did not offer any reason for Ms. Hawkins' testimony other than as potential impeachment of the victim. However, Petitioner had a tape recording of the interview and was able to call the interviewing officer, if necessary. Any testimony that Ms. Hawkins would be able to give, as a witness to Ms. James interview would be cumulative and repetitious.

Because Petitioner did not show how this testimony would add anything that the tape recording could not, it was well within the trial court's discretion to quash the subpoena. The Michigan Court of Appeals reasonably denied this claim on its merits and the court's determination was not contrary to, nor did it involve an unreasonable application of, clearly established Federal law.

### 5. Sentencing Error

There are certain claims that are non-cognizable on federal habeas review of state court convictions. A non-capital sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner claims that his right to due process was violated because the prosecution amended the habitual information to include a different prior felony after sentencing was imposed. At the time of sentencing, the prosecution was using two felonies that occurred on the same date. At sentencing, the prosecution sought to amend the habitual information by changing one of the

22

prior felony convictions for another.  The defense counsel did not object to this amendment, and sentencing proceeded before the amendment of the habitual information took place.  Although it may be more ideal for the prosecution to amend the habitual information before sentencing, Petitioner does not establish that the sentencing was in fact, erroneous.  In fact, Petitioner acknowledges that there were other felony charges that the prosecutor could use to amend the habitual information and as such, the number of prior felonies used by the prosecution was accurate.  The fact that one prior felony was switched out for another after sentencing, with no objection from defense counsel, at most, establishes a violation of state procedural law.  However, violations of state procedural law that do not infringe on specific federal constitutional protections are not cognizable claims on habeas review.

Petitioner was properly sentenced as a habitual fourth offender and was sentenced within the sentencing guidelines.  A sentence within the statutory limits is not subject to habeas review.  *Townsend*, 334 U.S. at 741.  A state court's alleged violation of its own procedures for establishing a habeas petitioner's status as an habitual offender is not a ground for habeas relief.  *See Reed v. Clark,* 984 F. 2d 209, 210 (7th Cir. 1993).  Petitioner is not entitled to habeas relief on his fifth claim.

23

### B.  Claims Not Presented on Direct Appeal

Petitioner also brings claims for: (6) Ineffective Assistance of Trial and

Appellate Counsel; (7) Incorrect Jurisdiction and Venue; (8) Right to Jury of

Peers; (9) Illegal Search and Seizure; and (10) Judicial Bias.  Petitioner did not

bring these claims on his direct appeal, but did present them in his M.C.R. 6.500

Motion and was denied relief.  Respondent contends that petitioner's remaining

claims are procedurally defaulted because petitioner raised these claims for the

first time in his post-conviction motion and failed to show cause and prejudice for

failing to raise these claims in his appeal of right, as required by M.C.R.

6.508(D)(3).

### 1.  Standard of Review

A prisoner seeking habeas relief in federal court must have presented the

claim upon which he seeks relief to the state appellate courts.  A determination of

whether a petitioner procedurally defaulted his claim requires an analysis under

the four-part test of *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  The four

factors a court must consider under *Maupin* are: (1) whether there is a state

procedural rule that is applicable to the petitioner's claim and that the petitioner

failed to comply with the rule; (2) whether the state courts enforced the state

procedural sanction; (3) whether the state procedural forfeiture is an "adequate

and independent" state ground on which the state can rely to foreclose review of

a federal constitutional claim; and, (4) the petitioner must demonstrate that there

24

was "cause" for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. On a M.C.R. 6.500 Motion:

> The court may not grant relief to the defendant if the motion . . . alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates (a) good cause for failure to raise such grounds on appeal or in the prior motion, and (b) actual prejudice from the alleged irregularities that support the claim for relief.

> M.C.R. 6.508(D)(3).

In *Coleman v. Thompson*, 501 U.S. 722, 750 (1982*)*, the Supreme Court stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

In order to overcome a procedural default, a petitioner must establish: (1) cause and prejudice; or (2) a fundamental miscarriage of justice. To establish cause, a petitioner must present a substantial reason to excuse the default. This reason must be "something external to the petitioner; something that cannot be fairly attributed to him." *Id.* at 722; *Murray v Carrier*, 477 U.S. 478, 488 (1986). Prejudice requires a showing that the default of the claim not merely created a

25

possibility of prejudice to the defendant, but that it worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions. *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002). To establish a fundamental miscarriage of justice, a petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Murray*, 477 U.S. at 496 (1986). To make a showing of actual innocence, a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *Schlup v Delo*, 513 U.S. 298 (1995).

### 2. Analysis

Factors (1), (2), and (3) of the *Maupin* test are easily established here. Michigan Court Rule ("MCR") 6.508 is an applicable state procedural rule, and this rule was actually enforced in Petitioner's case. In the present case, the Barry County Circuit Court denied petitioner's claims in his post-conviction motion, finding that he had failed to establish cause and prejudice, as required by M.C.R. 6.508(D)(3)(b), for failing to raise these claims in his appeal of right. Both the Michigan Court of Appeals and Michigan Supreme Court denied Petitioner's leave to appeal "because defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." In addition, the Sixth Circuit has established that M.C.R. 6.508(D) is an adequate and independent ground on which the state can rely to foreclose review. *Howard v. Bouchard*, 405 F.3d 459,

26

477 (6th Cir. 2005); *McFarland v. Yukins*, 356 F.3d 688, 697-698 (6th Cir. 2004); *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000) (finding that while the state court's statement that the defendant had failed to "meet the burden of establishing entitlement to relief under MCR 6.508(D)" was brief, it was based on an independent and adequate state procedural rule.)

Petitioner, here, has clearly procedurally defaulted his claims. To overcome this, he must be able to show cause and prejudice or that failure to consider the claims will result in a fundamental miscarriage of justice. With respect to his sixth, seventh, eighth, ninth, and tenth claims, petitioner alleges ineffective assistance of appellate counsel as cause to excuse his procedural default. Petitioner, however, has not shown that appellate counsel was ineffective.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy . . . Nothing in the Constitution or our interpretation of that document requires such a standard.
> *Id.* at 754.

27

Moreover, "[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003); *Banks v. Reynolds*, 54 F.3d 1508, 1515 (10th Cir. 1995) (finding failure to raise "dead bang winner" claim on appeal was constitutionally ineffective assistance of appellate counsel even though other strong claims were raised); *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989)("The threshold question is not whether trial counsel was inadequate but whether trial counsel was so

28

*obviously* inadequate that appellate counsel had to present that question to render adequate assistance. Counsel could be constitutionally deficient in omitting a dead-bang winner even while zealously pressing other strong (but unsuccessful) claims.")

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting his sixth through tenth claims. Appellate counsel filed a brief on appeal which raised six independent claims: (1) Petitioner was denied his right to counsel of choice; (2) there was insufficient evidence to establish Petitioner's guilt beyond a reasonable doubt; (3) improper testimony about an alleged "proposal" was elicited by the prosecution; (4) the jury instructions improperly lacked an instruction allowing for the defense of mistake; (5) Petitioner was precluded from calling an assistant prosecutor as a witness; and, (6) there were sentencing errors. Petitioner has not shown that appellate counsel's strategy in presenting such claims and not raising other claims was deficient or unreasonable. Moreover, none of the claims raised by petitioner in his post-conviction motion were "dead-bang winners." Because the defaulted claims are not "dead-bang winners," petitioner has failed to establish cause for his procedural default of failing to raise his sixth through tenth claims on direct review. *See McMeans v. Brigano*, 228 F. 3d 674, 682-83 (6th Cir. 2000); *Meade*, 265 F. Supp. 2d at 872.

In the present case, petitioner has failed to demonstrate cause to excuse the default. Because petitioner has not demonstrated any cause for his procedural default, it is unnecessary for this Court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. at 533. Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. Petitioner's sufficiency-of-evidence claim is insufficient to invoke the actual innocence exception to the procedural default doctrine. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003). Because petitioner has not presented any new reliable evidence that he is innocent of this crime, a miscarriage of justice will not occur if the Court declined to review his claims on the merits. *Pearl v. Cason*, 219 F. Supp. 2d 820, 828 (E.D. Mich. 2002).

Finally, to the extent that petitioner is raising his ineffective assistance of appellate counsel claim as an independent ground for relief, he is not entitled to the issuance of a writ of habeas corpus. Petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise his sixth, seventh, eighth, ninth, or tenth claims on his appeal of right, in light of the fact that these same claims were presented to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment and rejected by them. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004); *Bair v. Phillips*, 106 F. Supp. 2d 934,

30

938, 943 (E.D. Mich. 2000).  The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review, and therefore his attorney's failure to raise his sixth through tenth claims on petitioner's appeal of right did not cause him any injury.  *Bair*, 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1st Cir. 1987)).  In this case, there is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided on more than one occasion.  *Gardner*, 817 F. 2d at 189.

## V.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong.  *Id.* at 484.

Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. When a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petition should be allowed to proceed further. In such a circumstance, no appeal would be warranted. *Id.* A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). A district court therefore has the power to deny a certificate of appealability *sua sponte. See Dell v. Straub*, 194 F. Supp. 2d 629, 658 (E.D. Mich. 2002).

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Dell*, 194 F. Supp. 2d at 659. The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

32

## VI.   Order

Based upon the foregoing, IT IS ORDERED that the petition for a writ of

habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal

*in forma pauperis*.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 6, 2009

I hereby certify that a copy of the foregoing document was served upon
 counsel of record on August 6, 2009, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager

33